**UNITED STATES of America, Plaintiff,**

v.

**Thomas J. WOODS, Defendant.**

**No. 09–CR–1012–LRR.**

United States District Court, N.D. Iowa, Eastern Division.

March 3, 2010.

Ian Thornhill, US Attorney's Office, Cedar Rapids, IA, for Plaintiff.

Alfred E. Willett, Attorney at Law, Cedar Rapids, IA, for Defendant.

## SENTENCING MEMORANDUM

LINDA R. READE, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ................................................1104

II. PROCEDURAL BACKGROUND ........................................1104

III. FACTUAL BACKGROUND ...........................................1104

IV. ANALYSIS .....................................................1105
 A. Restitution: Discretionary or Mandatory .............................1106
 B. Causation Requirement ............................................1107
 1. Causation in restitution cases ..................................1107
 a. Causation under § 2259 .....................................1107
 b. Causation under § 3663 .....................................1108
 2. Applicable causation standard ..................................1109
 C. Causation Analysis ...............................................1109
 D. Conclusion .....................................................1113

V. DISPOSITION ..................................................1113

## I. INTRODUCTION

The matter before the court is the sentencing of Defendant Thomas J. Woods.

## II. PROCEDURAL BACKGROUND

On June 18, 2009, a grand jury returned a two-count Indictment (docket no. 2) against Defendant. Count 1 charged Defendant with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). Count 2 charged Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

On August 10, 2009, Defendant appeared before United States Magistrate Judge Jon S. Scoles and pled guilty to Count 1 of the Indictment pursuant to a plea agreement ("Plea Agreement") (docket no. 28–1). On August 25, 2009, the undersigned accepted Defendant's guilty plea.

On December 1, 2009, the United States Probation Office ("USPO") released a draft of Defendant's Presentence Investigation Report ("PSIR") (docket no. 35). Both parties lodged objections to the PSIR. On January 13, 2010, the USPO released a final PSIR (docket no. 38).

On January 27, 2010, Defendant filed a "Motion for Downward Variance from Advisory Guideline Range" ("Motion for Variance") (docket no. 45) and a Sentencing Memorandum ("Def. Sent. Mem.") (docket no. 46). That same date, the government filed a Sentencing Memorandum ("Gov't. Sent. Mem.") (docket no. 47). On February 2, 2010, the government filed a Resistance to the Motion for Variance (docket no. 48). On February 3, 2010, the government filed a "Supplemental Sentencing

Memorandum" ("Gov't. Supp. Sent. Mem.") (docket no. 49).

On February 10, 2010, the court commenced Defendant's sentencing hearing ("Hearing"). Assistant United States Attorney Mark A. Tremmel represented the government. Attorney Alfred E. Willett represented Defendant, who was personally present. The court reserved ruling on the issue of restitution. The court stated that it would issue the instant Sentencing Memorandum to more fully explain its findings on restitution.

## III. FACTUAL BACKGROUND [1]

Vicky[2] is 19 years of age. Vicky's biological father sexually abused her when Vicky was 10 and 11 years old. Vicky's father photographed and videotaped the sexual abuse. Several years later, Vicky was identified as the victim depicted in what has become known as the "Vicky Series." The "Vicky Series" is a collection of child pornography, including both video and still images, that depicts Vicky's sexual abuse at the hands of her father. Vicky has since learned that people throughout the world have downloaded and viewed the images of the abuse.

The child pornography found on Defendant's computer included six video images and three still images from the "Vicky Series." There is no evidence that Defendant distributed images from the "Vicky Series" to anyone else. The government received victim impact statements from Vicky, as well as from her mother and stepfather.

Vicky seeks restitution for "$170,345.00 to $193,025.00 in the cost of therapy, $28,366.10 in expenses related to restitution requests ... and $3,500.00 in attor-

---

**1.** The court draws the following facts from the uncontested portions of the PSIR, the Plea Agreement and the evidence presented at the Hearing.

**2.** For convenience, and to protect the individual's identity, the court refers to the individual depicted in the "Vicky Series" as "Vicky."

neys fees." Gov't. Supp. Sent. Mem., Ex. 14 at 1. In sum, Vicky requests $202,211.10 to $224,891.10 in restitution for her losses. The government seeks this amount on Vicky's behalf.

At the Hearing, the government offered and the court received as evidence a "Forensic Psychological Examination" ("Report") (docket no. 47–2) prepared by Randall L. Green, a clinical psychologist. Dr. Green interviewed Vicky on April 10, 2009 and prepared the Report on May 22, 2009. Dr. Green concluded that Vicky "suffered significant, permanent psychological damage as a direct result of the knowledge that images of her victimization, humiliation and exploitation have been downloaded and viewed by numerous individuals." Report at 2. Dr. Green believes that Vicky will "continue to suffer from the knowledge and belief that those images of her childhood abuse are at high probability to continue to be downloaded for prurient purposes." *Id.*

Among the specific harms that Vicky suffered or continues to suffer, Dr. Green identified the following: reduced academic performance, alcohol abuse, anger/resentment, anxiety, depression, distrust of men, lost earnings, insomnia and sleep disturbances, "reactivation" of trauma-related reminders and shame and embarrassment. *Id.* at 4. Dr. Green identified the trauma caused by her father's abuse as "Type I" trauma. *Id.* at 6. In contrast, Dr. Green identified the trauma caused by the knowledge of the images' dissemination as "Type II" trauma. *Id.* Dr. Green found that the Type II trauma "may not be as acute or extreme in nature" as the Type I trauma. *Id.* However, Dr. Green stated that Type II trauma represents a "chronic, toxic condition, the knowledge of which continuously works like corrosive acid on the psyche of the individual." *Id.* Dr. Green estimated that the recommended therapy for

Vicky would cost between $126,365 and $128,005, plus medication costs.

The court also received as evidence a "Psychological Status Report Summary" ("Supplemental Report") (docket no. 47–3) prepared by Dr. Green. On November 6, 2009, Dr. Green conducted a follow-up interview with Vicky. On December 2, 2009, Dr. Green prepared the Supplemental Report. Dr. Green found that Vicky's emotional well-being had deteriorated since his initial Report. Dr. Green attributes this to several factors, including Vicky's live statements at the sentencing hearings of several defendants who possessed her images, her receipt of more "victim notifications" and several attempts by individuals to contact her over the Internet. Dr. Green now estimates Vicky's costs for therapeutic recommendations to be between $170,345 and $193,025.

In addition to the victim impact statements set forth in the PSIR, the court admitted a letter ("Letter") (docket no. 47–6) written by Vicky. In the Letter, Vicky writes:

> I learn about each [defendant who possessed the "Vicky Series"] because of the Victim Notices. I have a right to know who has the pictures of me. The Notice puts name on the fear that I already had and also adds to it. When I learn about one defendant having downloaded the pictures of me, it adds to my paranoia, it makes me feel again like I was being abused by another man who had been leering at pictures of my naked body being tortured, it gives me chills to think about it. I live in fear that any of them[ ] may try to find me and contact me and do something to me.

Letter at 1.

## IV. ANALYSIS

Defendant objects to restitution "based upon a lack of proximate cause between

his offense of conviction and the areas of restitution sought by the victim." Def. Sent. Mem. at 1–2. The government argues that Vicky is a victim of Defendant who was directly and proximately harmed by Defendant's conduct. The court first considers whether restitution is mandatory or discretionary. Then, the court considers whether restitution is appropriate.

### A. Restitution: Discretionary or Mandatory

Title 18 U.S.C. § 2259 provides for mandatory restitution for Chapter 110 offenses. Counts 1 and 2 of the Indictment are Chapter 110 offenses and would typically be subject to the mandatory restitution provision. However, § 2259 does not make restitution mandatory in the instant sentencing. The depictions from the "Vicky Series" found on Defendant's computer only formed part of the basis for Count 2, which charged Defendant with Possession of Child Pornography. Pursuant to the Plea Agreement, Defendant pled guilty only to Count 1, which does not involve the "Vicky Series," and the government has agreed to dismiss Count 2. Thus, Vicky was not a victim of Defendant's offense of conviction. Accordingly, restitution is not mandatory pursuant to § 2259.[3]

The Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, provides for discretionary restitution for Title 18 offenses. *See United States v. Chalupnik,* 514 F.3d 748, 752 n. 2 (8th Cir.2008) (stating that § 3663 "govern[s] the award of discretionary restitution"). Section 3663(a)(3) provides that a sentencing court may "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3). Defendant's Plea Agreement provides, in relevant part:

> Defendant agrees to pay restitution, in accordance with Title 18 United States Code, Section 2259, to all victims of the offense to which he is pleading guilty as well as to all those victimized as part of the same course of conduct and common scheme adjudged as, or agreed to by the defendant to be, relevant conduct. *This amount includes restitution for any offense dismissed as a result of this plea agreement and any offense(s) included as relevant conduct.*

Plea Agreement at ¶ 16 (emphasis added).[4] The depictions from the "Vicky Series" were part of Count 2, which the government agreed to dismiss. However, Defendant agreed to pay restitution "for any

---

**3.** The government concedes that § 2259 does not apply. *See* Gov't Sent. Mem. at 4 ("The terms of the plea agreement are central to the restitution issue, because 18 U.S.C. § 2259 does not directly apply in this case."). At the Hearing, the government also stated that § 2259 does not apply in this case, because it is not the count of conviction.

**4.** The court notes that the Plea Agreement refers only to § 2259, which, for the reasons stated in Section IV. A, is incorrect. However, citation to the incorrect statute does not preclude an award of restitution under § 3663(a)(3). *See United States v. Anderson,* 545 F.3d 1072, 1078 (D.C.Cir.2008) (holding that district court was authorized to order restitution under § 3663(a)(3) despite parties' citation to incorrect statute in plea agreement). The Plea Agreement plainly embraces

conduct associated with dismissed counts and any relevant conduct. *See* Plea Agreement at ¶ 16 (stating that Defendant agrees to pay restitution "for any offense dismissed as a result of [the Plea Agreement] and any offense(s) included as relevant conduct"). Further, at the Hearing, the government stated that § 2259 does not apply in this case, because it is not the count of conviction. Defendant has not objected to restitution on the grounds that the Plea Agreement refers only to § 2259. The terms of the Plea Agreement and the parties' conduct clearly indicates their mutual understanding that restitution is permissible under the Plea Agreement. *See Anderson,* 545 F.3d at 1078–79 (noting that the parties' conduct at the sentencing hearing "plainly evinced their intent that the district court could order restitution").

offense dismissed as a result of [the Plea Agreement.]" *Id.* Defendant also does not dispute that his possession of the depictions from the "Vicky Series" is relevant conduct. *See* PSIR at ¶ 21 (stating that the Child Victim Identification Program ("CVIP") determined that Defendant's computer included images and videos from the "Vicky Series"). The Plea Agreement requires Defendant to pay restitution for "any offense(s) included as relevant conduct." Plea Agreement at ¶ 16. Accordingly, the court finds that it has discretion, pursuant to the Plea Agreement and § 3663(a)(3), to order Defendant to pay restitution to Vicky.[5]

## B. Causation Requirement

Section 3663(a)(3) allows a district court to order restitution "to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3). However, the statute does not allow the court to order restitution in the absence of some causal connection between a defendant's conduct and a victim's losses.

 Restitution has historically been tied to the amount of loss caused by the particular offense. *See* 3 Wright, King and Klein, Federal Practice & Procedure § 528.2 (3d ed. 2004) ("It has long been permissible for a court . . . to require, as one condition of probation, that defendant make restitution to aggrieved parties for actual damages or loss caused by his offense."). The Eighth Circuit Court of Appeals recognizes that restitution "is essentially a civil remedy created by Congress and incorporated into criminal proceedings for reasons of economy and practicality." *United States v. Carruth*, 418 F.3d 900, 904 (8th Cir.2005). Thus, restitution " 'tracks the recovery to which the victim would have been entitled in a civil suit against the criminal.' " *Chalupnik*, 514 F.3d at 753 (quoting *United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000)). Accordingly, there must be some causal connection between Defendant's conduct and Vicky's losses. *See United States v. Patty*, 992 F.2d 1045, 1051–52 (10th Cir.1993) (stating that, although the defendant could be ordered to pay restitution up to the sum specified in the plea agreement, the government still must prove that any loss to be repaid resulted from the defendant's criminal conduct).

### 1. Causation in restitution cases
#### a. Causation under § 2259

Many courts have considered whether a restitution award under § 2259 requires a causal connection between a defendant's

---

**5.** The court has this authority notwithstanding the fact that any loss caused to Vicky was not the basis for the offense to which Defendant pled guilty. Prior to 1990, the VWPA was construed to allow restitution only for losses caused by the specific conduct underlying the offense of conviction. *Hughey v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). Under *Hughey*, "restitution may be awarded only to victims of the offense of conviction, and a victim may not be compensated for conduct unrelated to the offense of conviction, even if that unrelated conduct was the subject of criminal charges dropped by the government in exchange for the defendant's guilty plea." *Chalupnik*, 514 F.3d at 752 (citing *Hughey*, 495 U.S. at 420–21, 110 S.Ct. 1979). In 1990, Congress amended the VWPA to allow a district court to "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3). "The amendment serves to clarify the scope of *Hughey* as allowing restitution beyond the offense of conviction 'when the defendant agrees to such in a plea agreement.' " *United States v. Silkowski*, 32 F.3d 682, 688–89 (2d Cir.1994) (quoting *United States v. Soderling*, 970 F.2d 529, 533 (9th Cir.1992)); *see also United States v. Tunning*, 69 F.3d 107, 116 (6th Cir.1995) ("Congress amended the VWPA to allow sentencing courts to order restitution for conduct that was not the basis of the offense of conviction when the defendant agreed to this as a term in a *plea agreement.*") (emphasis in original).

conduct and the harm to a victim. Although § 2259 does not contain an express causation requirement, "[c]ourts across the country have followed and applied the proximate-cause requirement in imposing restitution under Section 2259." *In re Amy*, 591 F.3d 792, 794 (5th Cir.2009) (collecting cases). As the Ninth Circuit Court of Appeals explained:

> Section 2259 ... incorporates a requirement of proximate causation: It states that the defendant shall pay "restitution for any offense" to the "victim" of the offense. It defines a "victim" as "the individual harmed *as a result of* a commission of a crime under this chapter," 18 U.S.C. § 2259(c) (emphasis added), and states that restitution shall compensate for "the full amount of the victim's losses," *id.* § 2259(b)(1), which includes medical costs, lost income, and "any other losses suffered by the victim *as a proximate result of* the offense[.]" *Id.* § 2259(b)(3)(F) (emphasis added).

> Section 2259 therefore requires a causal connection between the offense of conviction and the victim's harm.

*United States v. Laney*, 189 F.3d 954, 965 (9th Cir.1999). This court previously imposed a proximate cause requirement for restitution awards under § 2259. *See United States v. Raplinger*, No. 05–CR–49–LRR, 2007 WL 3285802, at *6 (N.D.Iowa Oct. 9, 2007) (Reade, C.J.) (declining to order restitution under § 2259 because the court was "unable to find by a preponderance of the evidence that [the victim's] hospitalization and counseling expenses were a proximate result of [the defendant's] offenses").

The causal analysis under § 2259 does not require "mathematical precision." *United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir.2007). Rather, "a rule of reasonableness is applied." *Id.* Accordingly, the sentencing court must be "able to estimate, based upon facts in the record, the amount of [the] victim's loss with some reasonable certainty." *Id.*

### b. Causation under § 3663

Courts have similarly required some showing of proximate cause for discretionary restitution awards under § 3663. This requirement is gleaned from the statute's definition of "victim" as a person who is *"directly and proximately harmed* by the commission of an offense for which restitution may be ordered[.]" 18 U.S.C. § 3663(a)(2) (emphasis added); *see also In re Doe*, 264 Fed.Appx. 260, 263 (4th Cir. 2007) ("[T]he mere fact that an injury is related to a crime is insufficient for restitution; there must be a 'direct and proximate' connection between the two to support an award under § 3663."); *United States v. Cutter*, 313 F.3d 1, 7 (1st Cir. 2002) ("First, restitution should not be ordered if the loss would have occurred regardless of the defendant's misconduct underlying the offense of conviction. Second, restitution is inappropriate if the conduct underlying the conviction is too far removed, either factually or temporally, from the loss.") [6]

The Eighth Circuit Court of Appeals has not developed a precise causation standard for restitution awards. Nonetheless, the First Circuit Court of Appeals has held that, under the VWPA:

---

**6.** In *Cutter*, the First Circuit Court of Appeals interpreted the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A. However, as the First Circuit Court of Appeals noted, "the causation language of the MVRA is the same as that in the VWPA[.]" *Cutter*, 313 F.3d at 7. Due to the nearly identical language of the MVRA and the VWPA, case law interpreting the MVRA is often instructive when interpreting the VWPA. *See United States v. Oslund*, 453 F.3d 1048, 1063 (8th Cir.2006) (noting the similarities between the two Acts).

The government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally).

*United States v. Vaknin,* 112 F.3d 579, 590 (1st Cir.1997). "The watchword is reasonableness. 'A sentencing court should undertake an individualized inquiry; *what constitutes sufficient causation can only be determined case by case, in a fact-specific probe.*'" *United States v. Corey,* 77 Fed.Appx. 7, 10 (1st Cir.2003) (quoting *Vaknin,* 112 F.3d at 588) (emphasis in *Corey* ).

### 2. Applicable causation standard

The parties agree that there must be a causal connection for the court to order Defendant to pay restitution to Vicky. However, the parties do not address the exact causation standard the court should apply. In arguing their respective positions, both parties rely upon the causation standard that developed under § 2259. Courts considering restitution orders under both § 2259 and § 3663 have found that interpretations of either statute are helpful in interpreting the other. *See, e.g., United States v. Van Brackle,* No. 2:08–CR–042–WCO, 2009 WL 4928050, at *3 n. 5 (N.D.Ga. Dec. 17, 2009) (considering restitution under § 2259 but finding precedent developed under § 3663 to be "equally applicable to proportionality concerns under 18 U.S.C. § 2259.").

The court finds no meaningful distinction between the causation analysis under either § 2259 or § 3663. Restitution awards are routinely made under both statutes where the court is able to determine with reasonable certainty that a victim's losses were caused by the defendant's conduct. *See, e.g., Doe,* 488 F.3d at 1160 (stating that "a rule of reasonableness is applied" to determine causation under § 2259); *Corey,* 77 Fed.Appx. at 10 (stating that "[t]he watchword is reasonableness" in determining issues of causation under § 3663); *cf. United States v. Farish,* 535 F.3d 815, 828 (8th Cir.2008) ("The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable." (Shepherd, J., concurring in part and dissenting in part) (internal citations and quotation marks omitted)); *see also United States v. Walker,* 896 F.2d 295, 306 (8th Cir.1990) (vacating restitution awards because "any such causal connection between these events is too remote and attenuated to permit a finding that the employees have suffered a loss as a result of the offense charged"). Accordingly, restitution is appropriate only if the government can prove, by a preponderance of the evidence, that Defendant's conduct was the proximate cause of Vicky's losses.[7]

### C. Causation Analysis

The government bears the burden to prove restitution. *See* 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government."); *see also*

---

**7.** The Plea Agreement further supports a proximate cause requirement. Defendant agreed to pay restitution to the "victims" of the offense to which he pled guilty "as well as to all those *victimized* as part of the same course of conduct and common scheme adjudged as, or agreed to by the defendant to be, relevant conduct." Plea Agreement at

¶ 16 (emphasis added). This language, particularly the term "victimized," at the very least implies some causal connection between Defendant's conduct and the victim's losses. This is clarified by the Plea Agreement's reference in the same sentence to § 2259, which courts have uniformly interpreted as imposing a proximate cause requirement.

*Raplinger*, 2007 WL 3285802, at *3 ("The government bears the burden to prove any restitution under § 2259 by a preponderance of the evidence.").

Victims and the government have only recently begun seeking restitution from those who receive and/or possess child pornography. As one court recently observed, "victims' success in obtaining restitution has varied significantly in district courts across the country." *United States v. Berk*, 666 F.Supp.2d 182, 190 (D.Me. 2009).

> At one extreme, courts have awarded the entire amount requested without any discussion as to proximate causation. *See, e.g., United States v. Staples*, No. 09–14017–CR, 2009 WL 2827204, at *4 (S.D.Fla. Sept. 2, 2009). At the other extreme, some courts have declined to order any restitution based on the lack of evidence showing a quantifiable loss proximately caused by the offense of conviction. *See, e.g., United States v. Simon*, 2009 WL 2424673, at *7 (N.D.Cal. Aug. 7, 2009). Some courts appear to have adopted a set amount for each defendant convicted of possession of child pornography. For example, the Central District of California seems to routinely order restitution of $5000 while the Eastern District of California routinely orders restitution of $3000. *See United States v. Brown*, No. 2:08–cr–1435–RGK–1 (C.D.Cal. filed Oct. 5, 2009) (awarding $5,000); *United States v. Ferenci*, No. 1:08–cr–0414 AWI, 2009 WL 2579102, at *6 (E.D.Cal. Aug. 19, 2009) [ (awarding $3,000) ]. Additionally, in some cases, the Government and the defendant have stipulated to a restitution amount. *See United States v. Granato*, No. 2:08–cr–198 (D. Nev. filed Aug. 28, 2009).

*Id.*

It is abundantly clear to the court that Vicky has been, and continues to be, harmed by the idea and knowledge of individuals who receive and possess images depicting her abuse. It is equally clear that the emotional harm will likely require Vicky to undergo extensive counseling to cope with the harm done by her father and the subsequent dissemination of her images.

However, the inquiry for restitution purposes goes beyond whether the victim suffered a harm. As one district court recently explained:

> It is undisputed that everyone involved with child pornography—from the abusers and producers of the images to the end-user/possessors such as the [d]efendant in this case—contributes to the victims' on-going harm. The difficulty lies in determining what portion of the [v]ictims' loss, if any, was proximately caused by the specific acts of this particular [d]efendant.

*Berk*, 666 F.Supp.2d at 191. Accordingly, the court must consider whether the government has met its burden to establish the losses that Defendant proximately caused by his conduct.

In *Berk*, the defendant pled guilty to possession of child pornography. *Id.* at 185–86. The government asked the court to order restitution, pursuant to § 2259, for the losses incurred by both Vicky and the individual depicted in the "Misty Series." *Id.* The district court found that there was "nothing in the record showing a specific loss that was proximately caused by this particular [d]efendant's possession of the victims' images." *Id.* at 191. The court ruled that the "losses described by the [v]ictims are generalized and caused by the *idea* of their images being publicly viewed *rather than caused by this particular [d]efendant having viewed their images.*" *Id.* (emphases added). In short, the district court found that "there is no evidence in the record before the Court

that, upon learning of this particular [d]efendant's conduct, the [v]ictims suffered any additional loss above and beyond what they had already experienced." *Id.*

In *United States v. Paroline*, the defendant pled guilty to possession of child pornography, including two images from the "Misty Series." 672 F.Supp.2d 781, 782–84 (E.D.Tex.2009). Pursuant to § 2259, the government requested $3,367,854 in restitution on behalf of Amy, the victim depicted in the "Misty Series." *Id.* The district court first rejected Amy's argument that § 2259 did not require a showing of proximate cause:

> If the Court were to adopt [the government's] reading of section 2259 and find that there is no proximate cause requirement in the statute, a restitution order could hold an individual liable for a greater amount of losses than those caused by his particular offense of conviction. This interpretation would be plainly inconsistent with how the principles of restitution and causation have historically been applied.

*Id.* at 790. The government argued that the proximate cause requirement was met "because Amy was obviously 'harmed' by [the defendant's] conduct." *Id.* at 791. The court found that the government was "conflating the proximate cause requirement with the requirement that the victim be harmed as a result of [the defendant's] conduct." *Id.* (emphasis added). The court acknowledged that Amy was certainly "harmed by [the defendant's] possession of Amy's two pornographic images," but reasoned that "this does little to show how much of her harm, or what amount of her losses, was proximately caused by [the defendant's] offense." *Id.* The court relied on historical conceptions of proximate cause to conclude that "the [g]overnment has the burden of proving the amount of

Amy's losses directly produced by [the defendant] that would not have occurred without his possession of her images." *Id.*

The district court recognized that the determination of an appropriate restitution amount was an "inexact science" and that it had "some latitude" in making this determination. *Id.* However, the court found that "[t]he losses described in Amy's reports are generalized and caused by her initial abuse as well as the general existence and dissemination of her pornographic images." *Id.* at 792. The court found that "[n]o effort ha[d] been made to show the portion of these losses specifically caused by [the defendant's] possession of Amy's two images" and ultimately denied the restitution request. *Id.* at 792. The court acknowledged that it is "incredibly difficult to establish the amount of a victim's losses proximately caused by any one defendant convicted of possession" but found that this difficulty "does not dispense with the requirement that the [g]overnment satisfy its burden of proving the amount of Amy's losses proximately caused by [the defendant's] possession of her two images." *Id.*

After the district court's denial of restitution in *Paroline*, Amy petitioned the Fifth Circuit Court of Appeals for a writ of mandamus. The Fifth Circuit Court of Appeals concluded that the district court's ruling was not indisputably wrong and denied the petition.[8] *In re Amy*, 591 F.3d at 795. In doing so, the Fifth Circuit Court of Appeals agreed with the district court that holding a defendant liable for a greater amount of losses than those caused by his offense of conviction would be "plainly inconsistent with how the principles of restitution and causation have historically been applied." *Id.*

---

**8.** To date, the Fifth Circuit Court of Appeals is the only circuit court to address the specific

issues raised in the instant Sentencing Memorandum.

■ There is ample evidence that Vicky has been harmed by her father's sexual abuse and the continued distribution, possession and viewing of the depictions of that abuse. There is also ample evidence that this harm will cause Vicky to incur substantial losses as she attempts to recover from this horrifying experience. However, there is no evidence in the record as to what losses were caused by Defendant's possession of her images. Neither Dr. Green's Report nor his Supplemental Report identify any particular loss attributable to Defendant's possession of Vicky's images. Defendant's name is not mentioned in either document. None of the documentation offered in support of Vicky's restitution request mentions Defendant's name or the impact that Defendant's offense had on Vicky.

Dr. Green concluded that Vicky suffered "as a direct result of *the knowledge* that images of her victimization ... have been downloaded and viewed by *numerous individuals*." Report at 2 (emphasis added). He also found that Vicky will "continue to suffer from the *knowledge and belief* that those images ... are at high probability to continue to be downloaded for prurient purposes." *Id.* (emphasis added). Dr. Green stated that Vicky's emotional obstacles, such as anxiety, distrust of men and depression, are caused by "her father's victimization, from those who have downloaded her images or the cumulative effect of both[.]" Report at 2. The court agrees that both of these factors have played a significant role in Vicky's losses. However, nothing in Dr. Green's Report or any other evidence before the court permits the court to discern with any reasonable certainty which of Vicky's losses were caused by Defendant's conduct. *See Doe,* 488 F.3d at 1160 (holding that, with re-

spect to § 2259, the causation requirement does not require "mathematical precision" but the court must be "able to estimate, based upon facts in the record, the amount of [the] victim's loss with some reasonable certainty."). The court is unable to determine to any reasonable certainty what losses are attributable to the original abuse by Vicky's father, what losses are attributable to others who have received, distributed or possessed the images or what losses were caused by Defendant's conduct.

The court cannot overstate the detrimental effect that the receipt and possession of child pornography certainly has on those depicted in such images. As the Supreme Court recognized, such images are "a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *New York v. Ferber,* 458 U.S. 747, 759, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). " 'Because the child's actions are reduced to a recording, the pornography may haunt him [or her] in future years, long after the original misdeed took place.' " *Id.* at n. 10 (quoting David P. Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act,* 17 Wake Forest L. Rev. 535, 545 (1981)). The court acknowledges the profound harm suffered by Vicky and all other children whose victimization has been recorded and disseminated. However, it is the court's duty in the instant sentencing to determine whether Defendant can be ordered to pay restitution to Vicky. To do so, the court must be able to determine, within reason, what losses Vicky suffered as a result of Defendant's conduct. Unfortunately, in light of the record, the court is unable to make this determination.[9]

---

9. The court does *not* find that restitution would never be appropriate in cases involving the receipt and/or possession of child pornog-

raphy. The court merely finds that, based on the evidence before the court, the government has not proven what losses Defendant caused.

## D. Conclusion

The court finds that the government has failed to carry its burden to prove the losses sustained by Vicky as a result of Defendant's conduct.[10] Accordingly, the court declines to order restitution pursuant to § 3663(a)(3) and the Plea Agreement.

## V. DISPOSITION

The court shall resume the Hearing on a date and time set forth by separate order. At the Hearing, the court shall sentence Defendant in a manner consistent with the instant Sentencing Memorandum.

**IT IS SO ORDERED.**

---

10. In light of the court's finding that the government has not proven by a preponderance of the evidence the amount of Vicky's losses caused by Defendant, the court need not address the government's request that any order of restitution be a "hybrid of joint and several liability, individual liability, and apportionment." Gov't. Sent. Mem. at 19.