**UNITED STATES of America,**

v.

**Mark CHURCH, Defendant.**

**Case No. 3:09–cr–00042.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

April 5, 2010.

charged in the indictment. 271 Fed.Appx. at 344–45.

Nancy Spodick Healey, United States Attorneys Office, Charlottesville, VA, for United States of America.

Keith Brian Marcus, Paris Blank LLP, Richmond, VA, for Mark Church.

## MEMORANDUM OPINION

NORMAN K. MOON, District Judge.

This matter is before the Court upon the Government's request for restitution on

behalf of "Amy," a child depicted in sexual abuse images unlawfully possessed by Defendant, filed on February 18, 2010 (docket no. 15), and Defendant's response thereto, filed on March 15, 2010 (docket no. 24). After consideration of the arguments set forth therein, and presented at the hearing on March 22, 2010, for the following reasons, the Court will GRANT the Government's request for restitution, and will ORDER the Defendant to pay the victim a nominal figure of restitution in the amount of one hundred dollars, in an accompanying Order, to follow.

The Court concludes, *infra,* that the Defendant's conviction for possession of child pornography is an offense for which restitution is contemplated under 18 U.S.C. § 2259. Further, the Court finds that the Government has met its burden of proving, by a preponderance of the evidence, that Amy is a "victim," under the statute, meaning that she was "harmed as a result of" Defendant's commission of the offense. There are several distinct harms visited upon a victim as a result of an individual's possession of a pornographic image of the victim as a child, and particularly in this case, the offense constituted a violation of the victim's right to privacy and caused her to suffer emotional harm as a result of the continued circulation and possession of her images. However, the Government is required to show, by a preponderance of the evidence, the measure of the victim's losses proximately caused by the Defendant's offense of conviction. Having reviewed all the evidence in the record, the Court finds nothing upon which it could make explicit findings of fact supporting a calculation of the full amount of the victim's losses proximately caused by the Defendant. The Government has established that the Defendant violated the victim's right to privacy and that consequently, she was "harmed as a result of" his offense. Given that issuance of a restitution award

under § 2259 is mandatory, the Court finds it appropriate to award a nominal figure of restitution to the victim, in the amount of one hundred dollars.

## I. BACKGROUND

In December 2004, a computer repair shop in Louisa County contacted law enforcement officials to report that a computer which had been dropped off for repairs was found to contain child pornography. An investigation revealed that the computer belonged to Defendant Mark Church ("Defendant"), and during an interview with Defendant at his home on December 21, 2004, he admitted that the computer was his, that he was the only user, and that he had collected images of children. Defendant turned over four CD–ROMS, upon which were stored approximately 700 pornographic images. Some of these images depicted prepubescent minors engaged in sexual acts with adults, including several images from the so-called "Misty" series of child pornography.

The victim in the "Misty" series (hereinafter referred to as "the victim" or "Amy" to protect her identity) was repeatedly raped and sexually assaulted by her uncle when she was eight and nine years old. Those acts were photographed and filmed for dissemination to an audience of "end-users" or "consumers" of child pornography. Amy endured this abuse over the telephone and Internet to serve this audience, and during these acts, was forced to hold up signs and otherwise communicate with consumers of child pornography. Her uncle made her meet these individuals; on at least one occasion, he took her into the woods near her home to meet collectors of child pornography. She was further pressured to solicit friends into joining her in the sexual acts. The photographs and recordings of her abuse have been circulated and distributed among con-

sumers of child pornography in the following years, and are allegedly still widely available on the Internet.

Though Defendant was caught in possession of these images in December 2004, he was not charged until approximately five years later. On November 5, 2009, a one count Information was filed by the Government, charging that Defendant had, in or about December 2004, possessed child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). That same day, Defendant pled guilty to the Information pursuant to a written plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The plea agreement provides for, *inter alia*, (1) a term of imprisonment of five years; (2) a term of supervised release of fifteen years and accompanying special conditions; and (3) an agreement to "pay any restitution if any and if applicable, to any victim of the offense." In exchange, the Government agreed to forego seeking additional charges relating to child pornography from images on Defendant's computer, unless it found evidence that Defendant produced child pornography. The Court accepted his guilty plea, and on March 22, 2010, the Court sentenced Defendant to a five year term of imprisonment and to a fifteen year term of supervised release, and heard arguments from counsel on the availability of an award of restitution in this case.

The victim, by and through her counsel, submitted to the Government a memorandum in support of restitution, and attached certain supporting documentation thereto. On February 18, 2010, the Government filed its Memorandum in Support of Restitution (docket no. 15), incorporating the materials and authorities submitted on behalf of the victim. The Government and the victim argue that the Court is required pursuant to 18 U.S.C. § 2259 to hold Defendant, an individual convicted of possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), liable for the "full amount" of the victim's losses. The victim estimates that the "full amount" of her losses, including damages for psychological care, lost income and attorney's fees, are calculated to be "at least $3,367,854." While the Government similarly argues that restitution must be ordered to cover "the full amount of the victim's losses," it merely states that some courts have chosen to award more than three and a half million dollars in restitution, recognizes the variability of restitution awards, and instead argues that "there is a basis for courts to center restitution awards" around the $150,000 "minimum damage value" set forth in 18 U.S.C. § 2255.

The Defendant argues that the Court should deny the Government's restitution request because the Court must be able to ascertain with reasonable certainty the amount of harm proximately caused by the commission of Defendant's offense. On the basis of the evidence presented, Defendant argues, any such figure would be entirely speculative.

## II. APPLICABLE LAW

The victim in this case seeks restitution pursuant to the Mandatory Restitution for Sex Crimes section of the Violence Against Women Act of 1994, codified at 18 U.S.C. § 2259. This statute provides, in pertinent part, as follows:

Section 2259. Mandatory restitution

(a) In general.—Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter.

(b) Scope and nature of order.—

(1) Directions.—The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2).

(2) Enforcement.—An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.

(3) Definition.—For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for -

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

(4) Order mandatory.—

(A) The issuance of a restitution order under this section is mandatory.

(B) A court may not decline to issue an order under this section because of—

(i) the economic circumstances of the defendant; or

(ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.

(c) Definition.—For purposes of this section, the term "victim" means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.

The Fourth Circuit has not yet had the opportunity to interpret the provisions of this statute. *See United States v. Hicks,* 1:09–cr–150, 2009 WL 4110260, at *2 (E.D.Va. Nov. 24, 2009). Furthermore, whether a defendant convicted of possession of child pornography may be ordered to pay restitution pursuant to § 2259 has not been explicitly addressed in the Western District of Virginia. The Court notes that in *United States v. Walsh,* 5:09–cr–00027 (W.D.Va. Mar. 16, 2010), restitution was ordered at sentencing in the amount of $1,250.00, an amount agreed upon by the parties, in a case where the defendant was convicted of one count of receipt and one count of possession of child pornography depicting "Vicky," an individual similarly exploited as a child and now pursuing restitution claims.

The burden of proof is on the Government to prove that restitution is appropriate under 18 U.S.C. § 2259 by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount of restitution shall by resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of loss sustained by a victim as a result of the offense shall be on the attorney for the Government."). *See also United States v. Julian,* 242 F.3d 1245,

1248 (10th Cir.2001) (noting that "[t]he government bears the burden of proving the amount of loss when seeking restitution," and remanding a restitution order under § 2259 where there was no evidence regarding the victim's need for future counseling); *United States v. Crandon*, 173 F.3d 122, 126 (3d Cir.1999) ("The government has the burden of demonstrating by a preponderance of the evidence the amount of loss sustained by the victim.").

### III. DISCUSSION

#### A. Offense of Possession under § 2259

"[T]he Court shall order restitution for any offense under [Chapter 110 of Title 18 of the United States Code]." 18 U.S.C. § 2259(a). The Defendant pleaded guilty to the one count Information, which charged him with possession of child pornography, in violation of §§ 2252A(a)(5)(B) and 2252A(b)(2). Because this offense is included in Chapter 110 of Title 18, an award of restitution may be appropriate. *See e.g., United States v. Berk*, 666 F.Supp.2d 182, 185 (D.Me.2009) (finding it "undisputed" that a conviction for possession of child pornography in violation of § 2252A(a)(5)(B) constituted a Chapter 110 conviction). It is therefore uncontested that, at the first step of this inquiry, Defendant's offense of possession of child pornography is an offense for which restitution is contemplated under 18 U.S.C. § 2259.

#### B. Identity of a "Victim" under § 2259

■ A "victim" is defined under this statute as "the individual harmed as a result of a commission of a crime under [Chapter 110]." 18 U.S.C. § 2259(c).

The Government and Amy argue at some length that so-called "end users" of child pornography, such as Defendant, commit an offense that harms the victim, even if he did not commit the physical sexual exploitation itself. Defendant appears to concede the fact that Amy is a "victim" within the meaning of § 2259 of his crime of possessing pornographic images of her as a child. *See* Defendant's Response, at 4 ("Accordingly, Mr. Church does not dispute that the claimant is a 'victim' of his possession of her image with respect to the meaning of § 2259(c)."). However, in the context of the Defendant's argument that the Government cannot prove proximate cause, he appears to backtrack from that concession. Indeed, Defendant argues as follows:

> It is uncontroversial to order restitution when the Defendant is convicted of the actual physical abuse of a child or of producing images constituting child pornography. But the victim and the Government have only recently begun seeking restitutions from the end-users or possessors of child pornography. The original harm that is the basis of the alleged victim's claim in this case was the result of the recording of sexual abuse and subsequent dissemination of those images. In the case of Amy, the abuse was perpetrated by her uncle, who also produced images and sent them electronically. Under the theory propounded by counsel for the victim and adopted by the Government, the harm suffered as a result of the defendant's conduct is the victim knowing that images of the abuse have been circulated. However, this harm, which is in essence a civil claim of pain and suffering damages, is incurred, whether or not the defendant possessed, or received those images.

Defendant's Response, at 10 (citations omitted). Consequently, in spite of Defendant's concession, a more thorough examination is warranted as to whether Amy is a "victim" under § 2259 of Defendant's offense of possession of her image, meaning, whether she was "harmed as a result of"

the offense. Without hesitation, the Court finds that Amy is a "victim" of this offense under § 2259.

Those who have been subjected to sexual abuse as minors for the production of child pornography, like Amy, suffer several distinct harms as a result of the subsequent distribution, receipt or possession of depictions of such abuse. Though all such harms may stem from one incident of sexual abuse, their effects upon the victim, the offender, and society in general, will not necessarily be uniform, nor will the absence of any one such harm mean that no harm has been suffered. Courts have regularly recognized three distinct harms visited upon those who were abused in child pornography as a consequence of the later distribution or possession of such images, although this list is by no means exhaustive. *See United States v. Planck*, 493 F.3d 501, 505 (5th Cir.2007) (recognizing that as a consequence of the possession and distribution of child pornography, "a child may be victimized in three distinct ways"); *United States v. Paroline*, 672 F.Supp.2d 781, 785–86 (E.D.Tex.2009) (same).

The first such harm visited upon the child victim was extensively discussed in the Supreme Court's landmark decision in *New York v. Ferber*, which upheld the constitutionality of a New York statute that prohibited the distribution of child pornography. 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). The Court recognized that "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children," because *"the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." Ferber*, 458 U.S. at 759, 102 S.Ct. 3348 (emphasis added). Not only is the production and initial distribution of child pornography injurious to the child victim, but so too is each subsequent distribution and each subsequent viewing. "Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). This emotional harm, which is caused by the victim's knowledge that such images exist and are circulated, may become manifest in many different ways. Such knowledge will frequently trigger in the victim feelings of shame, humiliation, and powerlessness. *See e.g.,* Audrey Rogers, *Child Pornography's Forgotten Victims*, 28 Pace L.Rev. 847, 853 (2008); Ethel Quayle et al., Contribution to the World Congress III against Sexual Exploitation of Children and Adolescents, *Child Pornography and Sexual Exploitation of Children Online*, 51–52 (2008), http://www.childcentre.info/public/Thematic—Paper—ICTPsy—ENG.pdf (stating that "when sexual exploitation in the form of photography and possible distribution of images is part of the victimisation," one assessing the child's assistance needs must take into account "the impotence felt by the child because of the disclosure process; [and] the shame and humiliation of 'being seen to let it happen' "). Furthermore, the emotional harm will not necessarily diminish with time. Where "the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography." David Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L.Rev. 535, 545 (1981).

A separate and distinct harm done to the victim in cases of possession of child

pornography often is framed in terms of a violation of the victim's right to privacy. *See e.g., Planck,* 493 F.3d at 505 (citing *United States v. Norris,* 159 F.3d 926, 929–30 (5th Cir.1998)) (noting that "the mere existence of child pornography represents an invasion of privacy of the child depicted"); *United States v. Shutic,* 274 F.3d 1123, 1126 (7th Cir.2001) (citing *United States v. Sherman,* 268 F.3d 539, 547 (7th Cir.2001)) (noting that the "possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy"). The reasoning underlying this form of harm is frequently grounded in the Supreme Court's statement that the distribution of child pornography violates "the individual's interest in avoiding disclosure of personal matters." *Ferber,* 458 U.S. at 759 n. 10, 102 S.Ct. 3348 (quoting *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)).

 As a general matter, the constitutional right to privacy extends to minors. *See Application of Gault,* 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (stating that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone"). Possession of child pornography offends the victim's rights to privacy due to the inherently nonconsensual nature of the production and dissemination of the material, *see e.g., United States v. Rogers,* 587 F.3d 816, 820 (7th Cir.2009) ("Minors lack the capacity to consent, and so sexual contact with a minor is always 'without consent.' "); *United States v. Abad,* 350 F.3d 793, 798 (8th Cir.2003), and offends the victim's rights to privacy due to the pornographic and exploitative nature of the material's content. *See Ferber,* 458 U.S. at 758, 102 S.Ct. 3348 ("The legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic

materials is harmful to the physiological, emotional, and mental health of the child.").

Finally, courts have recognized a third form of harm caused by those possessing or distributing child pornography that is visited upon the victims, namely, that "the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials." *Planck,* 493 F.3d at 505. *See also United States v. Forrest,* 429 F.3d 73, 79 (4th Cir.2005) (quoting the Child Pornography Prevention Act of 1996) ("[P]rohibiting the possession and viewing of child pornography will ... help[ ] to protect the victims of child pornography and to *eliminate the market* for the exploitative use of children.") (Emphasis in original). The interconnected relationship between the producers of child pornography and its consumers is well-established. In its factual findings underlying the Child Pornography Prevention Act of 1996,

> Congress [ ] described a chicken-and-egg scenario in which it would be impossible to determine whether child pornographers or consumers of child pornography were initially responsible for the creation of the child pornography industry. The underlying point, however, is that there is no sense in distinguishing ... between the producers and the consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous and direct abuse and victimization of child subjects.

*Norris,* 159 F.3d at 930. The harm caused by possessors of child pornography in creating and sustaining a market for such

material, in the aggregate, is quite clear. *See Osborne v. Ohio*, 495 U.S. 103, 110, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) ("[T]he advertising and selling of child pornography provide[s] an economic motive for and are thus an integral part of the production of [child pornography]."). However, the harm of creating an economic incentive to produce child pornography need not only be societal, and can cause direct injury to a particular victim of such abuse. For example, in its most direct form, an end-user of child pornography can encourage a particular victim's sexual abuse by communicating with, and providing an incentive to, the producer of child pornography to commit another act of sexual abuse upon a certain victim. Such an incentive need not be strictly commercial in nature. While the sexual exploitation of a minor "may be commercial as the offender may sell the images of the initial abuse," it is also recognized that "[i]t may also be a non-commercial act of exploitation where the offender will share the images of his abuse within a circle of likeminded individuals. He may do this since he in turn will receive images from others in his network, or he may do this without any such exchange." *Child Pornography and Sexual Exploitation of Children Online*, at 21–22.

It is not merely a matter of semantics that these are distinct harms resulting from an offender's possession of child pornography. By way of example, certain victims of sexual abuse and exploitation will develop an "avoidant" behavioral pattern, in which "the child's anxiety about the abuse is suppressed, either consciously or unconsciously," and "[w]hen asked about the event, the child denies it and may not even have a clear memory of it." Ann Wolbert Burgess & Christine A. Grant, Center for Missing & Exploited Children, *Children Traumatized in Sex Rings* 23 (1988), http://www.missingkids.com/missingkids/servlet/Resource Serv-let?LanguageCountry=en—US&PageId=647. While generally a victim will suffer emotional and psychic harm caused by the knowledge that images of such abuse are being circulated (the first harm noted above) it is possible that as a consequence of this behavioral pattern or for some other reason, a victim will not immediately be cognizant of such harm. Nevertheless, an end-user of child pornography would still have caused harm to the victim by violating her right to privacy (the second harm), or by encouraging the production or further distribution of images of the sexual abuse (the third harm). Similarly, even if a consumer of child pornography were able to acquire such images in a manner that does not encourage their production or distribution (by, for example, finding such images on a CD–ROM that the creator has purposefully discarded), the possession of such images would still constitute an invasion of the victim's right to privacy.

Therefore, to the extent that Defendant would extrapolate that Amy has not been harmed as a result of possessing pornographic images of her as a child, because her harm is something that "is incurred, whether or not the defendant possessed, or received those images," Defendant's Response, at 10, that argument must fail. Even if the Government had not established that Amy suffers emotional harm as a result of the continued circulation and possession of such images (which the Court finds it has), the fact of Defendant's possession of Amy's pornographic image as a child still constitutes harm because it is a violation of Amy's right to privacy.

Furthermore, the Court notes that case law concerning the grouping of offenses under the Sentencing Guidelines is instructive on the question of whether Amy constitutes a "victim" within the meaning of § 2259. In particular, several circuits

have held that the "primary victim" of the crime of distributing or possessing child pornography is the individual child depicted in the image, rather than society at large. *See e.g., United States v. Sherman,* 268 F.3d 539, 547–48 (7th Cir.2001) (holding that the individual child depicted in the image is the primary victim of the crimes of possession, receipt, or distribution of child pornography); *United States v. Hibbler,* 159 F.3d 233, 236–37 (6th Cir. 1998) (holding that the individual child depicted in the child pornography distributed and possessed by the defendant was the primary victim of his crimes); *United States v. Boos,* 127 F.3d 1207, 1213 (9th Cir.1997) (holding that individual child depicted in the image is the primary victim of crime of distributing child pornography). The Fourth Circuit has stated that "[t]he primary victim under section 2252(a) is society in general, with the minor a secondary victim." *United States v. Toler,* 901 F.2d 399, 403 (4th Cir.1990). Because Section 2259 does not require that Amy be the "primary victim" of Defendant's offense, but only that she be a "victim" of the offense, the Court finds support for that proposition both in *Toler* and in the aforementioned cases from other circuits. *See Hicks,* 2009 WL 4110260, at *2 n. 4 (stating that "the *degree* of [the child's] victimization does not prevent an award of restitution under § 2259") (emphasis in original).

The question, again, is whether Amy constitutes a "victim" within the meaning of § 2259, meaning that she is an "individual harmed as a result of" the Defendant's possession of pornographic images of her as a child. Amy, by her counsel, has submitted significant evidence that supports this general proposition. For example, in the Childhood Recovery Services Report of Psychological Consultation by Joyanna Silberg, Ph.D., a clinical psychologist who evaluated Amy, Dr. Silberg reported that

"the re-victimization of Amy through the trading of her images on the Internet is the source of enduring trauma that will have lasting effects on her and the symptoms she displays are particularly resistant to the standard treatment for post-traumatic stress and the effects of sexual abuse." Amy's Request for Restitution, at 3 (citing the Report of Dr. Silberg, at 8–10). In particular, Dr. Silberg states that "Amy is clear that there has been a resurgence of the trauma with her ongoing realization that her image is being traded on the internet," giving rise to feelings of "fear of discovery, shame, fears of the traumatization of others, and renewed self-blame about her participation." Report of Dr. Silberg, at 4. Similarly, in her Victim Impact Statement, Amy personally attests to the persistent harm she experiences as a result of the knowledge that images of her sexual abuse have been, and will continue to be, distributed and circulated. She states that "[i]t is hard to describe what it feels like to know that at any moment, anywhere, someone is looking at pictures of me as a little girl being abused by my uncle and is getting some kind of sick enjoyment from it. It's like I am being abused over and over and over again." Victim Impact Statement, at 1.

Upon consideration of the aforementioned authorities and the documentation submitted by the victim, the Court finds without hesitation that the Government has carried its burden of proving, by a preponderance of the evidence, that Amy is a "victim" within the meaning of § 2259 of Defendant's offense of possession of pornographic images of her as a child. Other federal courts are in agreement with this result. *See e.g., United States v. Brunner,* No. 5:08–cr–16, 2010 WL 148433, at *1 (W.D.N.C. Jan. 12, 2010) (finding that "[t]here can be no doubt that Amy, to whom that court refers as "Misty," fits the

statute's definition of a "victim"); *Paroline*, 672 F.Supp.2d at 787 (holding that the Government has "met its burden of establishing that Amy was 'harmed as a result of'" the defendant's possession of images of her sexual abuse); *Hicks*, 2009 WL 4110260, at *3 (finding that the Government "has established by a preponderance" that Vicky, an individual similarly sexually exploited as a child, "meets the definition of a 'victim' under § 2259").

### C. Causation Requirement

It is apparent from the briefing of the parties, as well as from a review of similar cases, that causation between Defendant's offense and the measure of the victim's damages is the principal issue in dispute. The question to be addressed is what level of causation is required by § 2259 between Defendant's offense and the harm done to the victim for the Court to order an award of restitution. More specifically, the parties contest whether § 2259 allows a victim to recover for only those losses proximately caused by the defendant being sentenced, or "whether it allows a victim to recover the full amount of her losses from the defendant being sentenced, notwithstanding other defendants' (most obviously, the abuser's) contribution to the loss." *Berk*, 666 F.Supp.2d at 186.

### 1. Contentions of the Parties

Amy takes the position that § 2259 does not require "proximate harm" or "direct harm." Instead, she argues that it only requires that the victim must be "harmed as a result of a commission of a crime" in order to receive mandatory restitution, *i.e.*, that which is required in order to satisfy the definition of "victim" in § 2259(c). Amy's Request for Restitution, at 22. In support thereof, she argues first that by contrasting the definition of "victim" found in the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663(a)(2) and the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A(a)(2), with that found in § 2259(c), it is clear that Congress did not intend for proximate cause to be read into the statute. In these provisions of the VWPA and MVRA, the term "victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered," whereas in § 2259(c), the term "victim" is defined merely as "the individual harmed as a result of a commission of a crime under this chapter." Amy argues that if Congress had intended to include in § 2259 a requirement of proximate causation, it would have used language to that effect found in the other restitution statutes. Further, Amy cites authorities that recognize that § 2259 has a broad mandate to provide for restitution in the "full amount of the victim's losses." *See e.g., In re: Amy*, 591 F.3d 792, 797 (5th Cir.2009) (Dennis, J., dissenting).

In the first instance, the Government echoes Amy's interpretation of § 2259, which is that it does not require her harm to be "proximately caused" by the Defendant's offense.[1] For example, the Government contends that "the inclusion of 'proximate cause' in the last of the enumerated types of losses" in § 2259(b)(3) "may mean

---

1. The Court notes that in several like cases, the Government did not contest that § 2259 requires the defendant's offense to proximately cause the victim's harm, and instead, argued that proximate cause had been proven in that case. *See e.g., Paroline*, 672 F.Supp.2d at 787–88 (noting that the Government is "of the view that section 2259 requires a showing of proximate cause between the victim's losses and the defendant's conduct," but argues that it has met its burden of proof); *Berk*, 666 F.Supp.2d at 187 ("Ultimately, the Government states that to be recoverable, the Victims' losses 'must have been the proximate result of Mr. Berk's possession of child pornography.'").

... that such a requirement does not accompany all the other types of loss." Thereafter, the Government takes a slightly more nuanced position. Specifically, the Government argues that "[c]onstitutional rationale and sentencing practice undermine an argument that there is a statutory proximate cause requirement that precludes restitution being ordered against ... the 'end users,' of child pornography." Thus, without disputing that § 2259 includes "a causal requirement," the Government argues that no matter how such a requirement is labeled, it does not flatly bar the Court from ordering restitution where the Defendant was convicted of possession of child pornography.

The Defendant advances several arguments supporting an interpretation of § 2259 by which the Court must find proximate causation between the Defendant's offense and the harm to the victim to order an award of restitution. First, as a matter of statutory construction, the Defendant argues that the language in the catchall provision for "victim's losses," which states that included therein are "any other losses suffered by the victim *as a proximate result of the offense,*" § 2259(b)(3)(F), (emphasis added), is equally applicable to each preceding enumerated type of loss. Defendant contends that "the natural and implicit construction of the statute demands that the proximate cause requirements be read as applicable to every class of loss set forth in the statute." Defendant's Response, at 8. Second, the Defendant cites several authorities on the importance of the Court conducting a "proximate cause" inquiry as a general matter. Third, the Defendant draws support for this interpretation from the VWPA, 18 U.S.C. § 3663(a)(2), about which the Supreme Court held in *Hughey v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), that the "language and structure of [the

VWPA] make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." Finally, the Defendant argues that "[n]early every court to interpret § 2259 has found that it requires the victim's loss to have been proximately caused by the offense of conviction." Defendant's Response, at 7.

## 2. The Language of § 2259

■ The Court's analysis of § 2259, "[a]s with any question of statutory interpretation ... begins with the plain language of the statute." *Triton Marine Fuels Ltd. v. M/V PACIFIC CHUKOTKA,* 575 F.3d 409, 416 (4th Cir.2009) (quoting *Jimenez v. Quarterman,* —— U.S. ——, 129 S.Ct. 681, 685, 172 L.Ed.2d 475 (2009)). In analyzing the statutory language, the Court must first "determine whether the language at issue has a plain and unambiguous meaning." *In re Coleman,* 426 F.3d 719, 725 (4th Cir.2005) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). The Court's determination as to whether a statute is ambiguous is guided "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson,* 519 U.S. at 341, 117 S.Ct. 843). If the Court finds the language of the statute's language to be plain and unambiguous, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)).

Under any plausible reading of § 2259, the plain language of the statute requires

causation. An award of restitution under § 2259 can only be made payable to a "victim" within the meaning of this statute, 18 U.S.C. § 2259(b)(1), and the term "victim" is defined as "the individual *harmed as a result of* a commission of a crime under [Chapter 110]." 18 U.S.C. § 2259(c) (emphasis added). The provision defining the "victim" as one "harmed as a result of" the Defendant's offense thus requires causation, and restitution can only be awarded, at a minimum, where such causation is found. This causation requirement is explicit, not implied.[2]

The more contentious issue is whether § 2259 requires a defendant's offense to have proximately caused harm to the victim. The word "proximate" is only used once in § 2259, and it is around its placement that the parties' statutory construction arguments are centered. Defendant argues that the modifier, "as a proximate result of the offense," which is found in the catchall provision of § 2259(b)(3) categories of loss, is equally applicable to each preceding enumerated category of loss.[3] The Supreme Court has held that "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural

construction of the language demands that the clause be read as applicable to all." *Porto Rico Ry., Light & Power Co. v. Mor,* 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920). There is a question as to whether, and to what extent, this principle of statutory construction applies to § 2259. The Court in *Porto Rico Ry.* was concerned with the construction of a *sentence in a statute,* the modifier placed at the end of which was held to apply to several prior clauses within that sentence (that were separated by commas), rather than *separate subsections of a statute,* as in the present case.[4] However, the Court finds compelling the principle applied in *Porto Rico Ry.* under such similar circumstances, and finds that the words, "as a proximate result of the offense" contained in the catchall provision, are "applicable as much to the first and other words as to the last," and that the most natural reading of § 2259 demands that the proximate cause requirement be read as applicable to all classes of loss set forth in § 2259(b)(3).

The weight of judicial authority supports the Court's holding that the language, "as a proximate result of the offense," contained in the catchall provision is equally

---

**2.** While there has been disagreement among courts as to the appropriate level of causation required by § 2259, out of the many courts to have addressed this issue, the Court is aware of no cases wherein the requirement of causation has been dispensed with in its entirety.

**3.** (3) Definition.—For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for—
 (A) medical services relating to physical, psychiatric, or psychological care;
 (B) physical and occupational therapy or rehabilitation;
 (C) necessary transportation, temporary housing, and child care expenses;
 (D) lost income;
 (E) attorneys' fees, as well as other costs incurred; and

(F) *any other losses suffered by the victim as a proximate result of the offense.*
 (Emphasis added).

**4.** The statutory provision interpreted was as follows: "Said District Court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign state or states, or citizens of a state, territory, or district of the United States *not domiciled in Porto Rico* . . . ." (Emphasis added). The Court concluded that the words "not domiciled in Porto Rico" should be read to apply to the entire phrase, "citizens or subjects of a foreign state or states, or citizens of a state, territory, or district of the United States," rather than just "district of the United States." *Porto Rico Ry.,* 253 U.S. at 348, 40 S.Ct. 516.

applicable to the other enumerated types of loss, and therefore that § 2259 requires a showing of proximate cause. *See e.g., In re: Amy*, 591 F.3d 792, 794 (5th Cir.2009) ("Courts across the country have followed and applied the proximate-cause requirement in imposing restitution under Section 2259."); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir.1999) (holding that § 2259 "incorporates a requirement of proximate causation" on the basis of its definition of "victim," and the language in the catchall provision); *United States v. Patton*, Crim. No. 09–43, 2010 WL 1006521, at *2 (D.Minn. March 16, 2010) (noting that the language in the catchall provision "expresses the requirement that restitution be ordered only if a defendant's crime is the proximate cause of the victim's losses"); *United States v. Van Brackle*, No. 2:08–cr–042, 2009 WL 4928050, at *4 (N.D.Ga. Dec. 17, 2009) ("Applying this canon of statutory construction [from *Porto Rico Ry.*], the court holds that the phrase 'as a proximate result of the offense' applies to each enumerated category of loss in § 2259(b)(3)."); *Paroline*, 672 F.Supp.2d at 787–88 (holding that "[b]ased upon this rule of construction" in *Porto Rico Ry.*, "the phrase 'as a proximate result of the offense' would apply equally to all the loss categories in section 2259(b)(3)"); *Berk*, 666 F.Supp.2d at 188 ("Thus, the plain language of the statute clearly requires that losses—to be recoverable in restitution—must have been proximately caused by the acts which constitute the offense of conviction.").

### 3. Principles of Restitution and Causation

The Court has found the plain language of § 2259 to unambiguously require a showing of proximate causation for an order of restitution to issue under that statute. However, to the extent that there remains any ambiguity in its interpreta-tion, Congress passed § 2259 against a backdrop of well-established principles of restitution and causation, which reinforce the fact that the Court can only order Defendant to pay restitution under § 2259 where it is able to determine, with reasonable certainty, that the victim's losses were proximately caused by the instant offense.

■ The historical practice of federal judges supports the principle that a showing of causation linking the specific offense to the victim's harm is integral to an award of restitution. *See Berk*, 666 F.Supp.2d at 187. An early example in our judicial system came with the passage of the Federal Probation Act in 1925, 18 U.S.C. § 3651 (repealed effective Oct. 12, 1984), whereby federal judges were authorized to impose criminal restitution as a condition of probation. However, the courts were only permitted to require a defendant to pay restitution "to aggrieved parties *for actual damages or loss caused by the offense for which conviction was had,*" which was interpreted to mean "the amount involved in the particular offense for which the defendant was indicted and of which he was convicted." *United States v. Taylor*, 305 F.2d 183, 187 (4th Cir.1962) (citing cases) (emphasis in original). The defendant in *Taylor* was convicted of failing to file tax returns for 1956 and 1957 and filing a false return for 1955, and the district court awarded restitution to the Internal Revenue Service of a sum which included, *inter alia*, "any additional income tax that might be found to be due for the years 1958, 1959, and 1960, together with all applicable penalties and interests on said sums until date of payment." *Id.* at 185. The court in *Taylor* held that the district court exceeded its authority under the Probation Act by ordering restitution in an amount that exceeded the figure stated in the indictment and defendant's admitted subsequent tax liability. *Id.* at 187. The

Fourth Circuit subsequently reiterated the holding in *Taylor*, stating that an award of restitution under 18 U.S.C. § 3651 (repealed effective Oct. 12, 1984) required "that the precise amount of loss must be legally determined in the underlying criminal proceeding," and that this legal determination must be "of the exact amount of actual loss caused by the offense." *United States v. Stuver*, 845 F.2d 73, 76 (4th Cir. 1988). *See also United States v. Serhant*, 740 F.2d 548, 555 (7th Cir.1984) (holding that it was error for trial court to order restitution in a manner not limited to the "actual loss caused by the offenses" for which conviction was had); *United States v. Shelby*, 573 F.2d 971, 976 (7th Cir.1978) (same).

Congress enacted detailed restitution provisions in the VWPA under which a district court may order a defendant to pay restitution to any victim of an offense of conviction. *See* 18 U.S.C. § 3663(a)(1)(A). The statutory language in the VWPA makes clear that the level of causation required in the context of the Federal Probation Act (or one greatly similar) is equally applicable to awards of restitution under the VWPA. *See* 18 U.S.C. § 3663(a)(2) (defining the term "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered"). The case law interpreting the restitution provisions of the VWPA lends further support to this proposition. In *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), the defendant pleaded guilty to one count of the unauthorized use of a credit card issued by MBank to a particular cardholder, but was ordered to pay restitution in the amount of MBank's losses resulting from defendant's alleged theft and use of 21 cards from MBank cardholders. The Court reversed the restitution order, holding that "the language and structure of the [VWPA] make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." 495 U.S. at 413, 110 S.Ct. 1979. "While not necessarily fixed by the description given in the corresponding charge itself, the award [of restitution under the VWPA] *may not include losses unrelated to the count of conviction.*" *United States v. Henoud*, 81 F.3d 484, 488 (4th Cir.1996) (citing *United States v. Bailey*, 975 F.2d 1028, 1033–34 (4th Cir.1992)) (emphasis added). Indeed, an award of restitution under the VWPA requires more of a showing than their simple relation to the count of conviction. *See In re Doe*, 264 Fed.Appx. 260, 263 (4th Cir.2007) ("[T]he mere fact that an injury is related to a crime is insufficient for restitution; there must be a 'direct and proximate' connection between the two to support an award under § 3663.").

The last major statute upon which the Court can enter an award of restitution in a criminal case is the Mandatory Victims Restitution Act of 1996, which provides that a sentencing court shall award restitution to victims of certain categories of offenses. *See* 18 U.S.C. § 3663A. For those categories of offenses specified therein, "[t]he MVRA differs from the VWPA by making clear that a district court is *required* to order a defendant to make restitution to the victim of a covered offense in the full amount of each victim's loss." *United States v. Roper*, 462 F.3d 336, 338 (4th Cir.2006) (internal quotation marks omitted) (emphasis in original). Yet in spite of the express command of the MVRA mandating restitution under its provisions, again, Congress kept the familiar causation requirement found in the aforementioned restitution statutes. The definition of "victim" under the MVRA is "substantively identical" to that set forth

in the VWPA, as both require that such an individual be "directly and proximately harmed as a result of the commission of an offense." *See United States v. Aguirre–Gonzalez,* 597 F.3d 46, 51 (1st Cir.2010) (citing *United States v. Chalupnik,* 514 F.3d 748, 753 (8th Cir.2008)).

A recent Fourth Circuit case reiterated this causation requirement, wherein a restitution order of a district judge under the MVRA was vacated as an abuse of discretion. *See United States v. Llamas,* 599 F.3d 381 (4th Cir.2010) (published). In *Llamas,* the court held that "the focus of [a sentencing] court in applying the MVRA must be on the losses to the victim *caused by the offense." Id.* at 390–91 (citing *United States v. Newsome,* 322 F.3d 328, 341 (4th Cir.2003)) (emphasis in original). The defendant (and others) in *Llamas* had operated a call center in Costa Rica that employed a sweepstakes scheme to bilk victims out of approximately $1.7 million, which were the losses proven to be attributable to that specific conspiracy offense for which the defendant was convicted. However, the district judge ordered defendant to pay restitution of more than $4.2 million, "concluding that he was jointly and severally liable for losses caused not only by the Center, but also by other Costa Rican call centers utilizing similar sweepstakes schemes." *Id.* at 391. The court in *Llamas* held that it was legal error for the district judge not to limit restitution to those losses attributable to the Center. *Id.*

■ In other words, it is a well-established principle in criminal restitution that the amount of restitution awarded to a victim may not exceed those losses caused by the particular offense of the defendant's conviction. This principle is a consistent thread throughout the jurisprudence on the Federal Probation Act as well as the VWPA and the MVRA, and Congress en-

acted § 2259 against this backdrop. The Court notes that the "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents and authorities that inform the analysis." *Dolan v. U.S. Postal Service,* 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006). By defining the term "victim" as "the individual harmed as a result of a commission of a crime under [Chapter 110]," § 2259(c), and including the modifier, "as a proximate result of the offense," to the definition of "full amount of the victim's losses," § 2259(b)(3), Congress marks the continuance of, rather than deviation from, well-established principles of restitution.

### 4. The Rule of Lenity

■ Finally, even though the Court has found that § 2259 unambiguously requires a showing of proximate causation, and has found that well-established principles of restitution support this interpretation, to the extent that there remains any ambiguity in the application of the statute, the Court must apply principles of lenity to resolve the ambiguity in this criminal statute in favor of the Defendant. In *Hughey v. United States,* 495 U.S. 411, 422, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), the Government attempted to bolster its argument that court-ordered restitution should be available for acts outside of the defendant's offense of conviction, by referring (much as the Government does in the instant case) to broad legislative statements of purpose in enacting the VWPA. In response, the Supreme Court held that it "need not resolve the policy questions surrounding VWPA's offense-of-conviction limitation on restitution orders." *Hughey,* 495 U.S. at 422, 110 S.Ct. 1979.

Even were the statutory language regarding the scope of a court's authority

to order restitution ambiguous, long-standing principles of lenity, which demand resolution of ambiguities in criminal statutes in favor of the defendant, *Simpson v. United States,* 435 U.S. 6, 14–15, 98 S.Ct. 909, 913–914, 55 L.Ed.2d 70 (1978) (applying rule of lenity to federal statute that would enhance penalty), preclude our resolution of the ambiguity against [the defendant] on the basis of general declarations of policy in the statute and legislative history. *See Crandon v. United States,* 494 U.S. 152, 160, 110 S.Ct. 997, 1002, 108 L.Ed.2d 132 (1990) ("Because construction of a criminal statute must be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text.").

*Id.* at 422, 110 S.Ct. 1979.

In light of the Supreme Court's application of the principles of lenity to resolve ambiguities concerning the lawfulness of an award of restitution under the VWPA in favor of the defendant, in the instant case, this Court so too must resolve any remaining ambiguity in § 2259 in favor of an interpretation that requires all listed types of harm in § 2259(b)(3) done to the victim to be "a proximate result of the offense" that Defendant committed.[5]

Therefore, after full consideration of all of the arguments and authorities before the Court on this question, the Court holds that § 2259 requires that a victim's losses be proximately caused by the offense for which the Defendant was convicted to be recoverable in restitution.

### 5. Proximate Cause

■ The Government argues, in the alternative, "even to the extent that a causal connection between commission of the offense and the resulting harm is read into the statute, that causal requirement has been met in this case." Relying upon Amy's documents filed under seal, *i.e.,* her Victim Impact Statement, the Report of Psychological Consultation, and the Smith Economics Group, Ltd. Report calculating the value of certain losses, the Government argues that Amy "has documented ... a causal connection between the harm that the defendant created by his actions regarding images of her abuse and the costs associated with future treatment and counseling, loss of wages, and reduction in value of life."

Proximate cause is defined as "[a] cause that directly produces an event and without which the event would not have occurred." *Black's Law Dictionary* 234 (8th ed.2004). It has also been stated that "[p]roximate cause is normally satisfied where there is a reasonable connection between the act or omission of the defendant and the damages which the plaintiff has suffered." *Rux v. Republic of Sudan,* 461 F.3d 461, 473 (4th Cir.2006) (citing W. Keeton et al., *Prosser & Keeton on the Law of Torts* 263 (5th ed.1984)) (internal quotation marks omitted). The Court recognizes the limitations inherent in determining the amount of harm to the victim proximately caused by the Defendant. Because "[t]he determination of an appropriate restitution amount is by nature an inexact science," *United States v. Teehee,*

---

**5.** The Court notes that while some circuits have refused to apply the rule of lenity to their interpretation of the MVRA on the grounds that the MVRA is not a punitive statute, *see e.g., United States v. Serawop,* 505 F.3d 1112, 1122–23 & n. 4 (10th Cir.2007), this argument is foreclosed to the Government in this case because the Fourth Circuit has recognized that criminal restitution is fundamentally penal in nature. *See e.g., United States v. Cohen,* 459 F.3d 490, 496 (4th Cir.2006); *United States v. Bruchey,* 810 F.2d 456, 461 (4th Cir.1987).

893 F.2d 271, 274 (10th Cir.1990), § 2259 does not impose "a requirement of causation approaching mathematical precision." *United States v. Doe*, 488 F.3d 1154, 1159–60 (9th Cir.2007). Among those courts that have found § 2259 requires a showing of proximate cause, and among those that have found that a different or lesser showing of causation is required, all have sought to reach a "reasonable" determination of the appropriate restitution due to the victim as a result of a defendant's offense. *Compare Paroline*, 672 F.Supp.2d at 791–92 (finding § 2259 requires a showing of proximate cause, and being guided by "reasonableness" principle), *with Hicks*, 2009 WL 4110260, at **3–4 (finding § 2259 contains "a causation requirement," and applying "a rule of reasonableness" in its inquiry).

 The Government has the burden of proving the amount of restitution by a preponderance of the evidence. *See United States v. Julian*, 242 F.3d 1245, 1248 (10th Cir.2001). Therefore, under circumstances such as these, in which the Defendant is charged with possession of child pornography depicting the victim, and restitution is sought under § 2259, the Government has the burden of proving the amount of the victim's losses directly produced by the Defendant that would not have occurred without his possession of her images. *See e.g., Paroline*, 672 F.Supp.2d at 791–92.

The following materials filed under seal make clear that Amy has suffered tremendously as a victim of child pornography, and in particular that she suffers as a result of the fact that individuals receive and possess images of her abuse. "Every day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again. It hurts me to know someone is looking at them—at me—when I was just a little girl being abused for the camera." Victim Impact Statement, at 1. She also states that "[i]t is hard to describe what it feels like to know that at any moment, anywhere, someone is looking at pictures of me as a little girl being abused by my uncle and getting some kind of sick enjoyment from it. It's like I am being abused over and over again." *Id.* Amy recounts at length in her Victim Impact Statement the many ways in which this abuse has manifested itself, including nightmares, flashbacks, constant fears, trust issues. The report of her psychologist addressed the particular issue of the harm done to Amy as a result of the continued possession and transactions in her images, by concluding, in one example, that "[t]he sexual assault perpetrated against Amy, and its continued memorialization in pictures which continue to be traded and used affect her in a variety of ways, and has had a long lasting and life changing impact on her," including "significant effects" on her "feelings of shame, self-blame, and guilt, self-esteem, alcohol abuse, dissociation, academic progress, interpersonal relationships, and vocational success." Report of Dr. Silberg, at 8.

However, the fact that the victim has suffered a harm as a result of the dissemination of these images is not the end of the inquiry for restitution purposes under § 2259. "[T]he court must consider whether the government has met its burden to establish the losses that Defendant proximately caused by his conduct." *United States v. Woods*, 689 F.Supp.2d 1102, 1110 (N.D.Iowa 2010); *see also Berk*, 666 F.Supp.2d at 191 ("The difficulty lies in determining what portion of the [v]ictim's loss, if any, was proximately caused by the specific acts of this particular [d]efendant.").

Like the holding of the District Court of Northern District of Iowa in *Woods*, it

appears that "there is no evidence in the record as to what losses were caused by Defendant's possession of her images." 689 F.Supp.2d at 1112. The brief submitted on behalf of the victim does not mention or make any reference to this Defendant. Nor do the materials filed and submitted under seal. The only evidence on the record that reflects the victim's knowledge that the Defendant exists is a statement made by the Government at sentencing: the victim has opted to receive notice when an individual is apprehended in possession of her pornographic images as a child, and she consequently received notice that the Defendant was being prosecuted for possessing such images.

While the Government is correct that the Court can rely upon the proof of experts in calculating a figure for restitution, *see e.g., Hicks,* 2009 WL 4110260, at *6, that does not relieve the Government of its burden to prove, by a preponderance of the evidence, that some measure of damages was proximately caused by the offense for which the Defendant has been convicted.

To establish a record sufficient to ensure effective appellate review of its restitution orders, the Court must make "explicit findings of fact" supporting its calculation of "the full amount of the victim's losses," as delineated in § 2259(b)(3), which were proximately caused by the Defendant's offense. *Cf. United States v. Wilkinson,* 590 F.3d 259, 270 (4th Cir.2010) (vacating and remanding district court's finding the victim suffered no actual pecuniary loss under the MVRA, as "the record [was] not amenable to appellate review"); *United States v. Blake,* 81 F.3d 498, 505 (4th

Cir.1996) ("This court has repeatedly held that in order to ensure effective appellate review of restitution orders, sentencing courts must make explicit findings of fact on each of the factors set forth in 18 U.S.C.A. § 3664(a)."); *United States v. Plumley,* 993 F.2d 1140, 1143 (4th Cir. 1993) ("The district court must make explicit factual findings as to those factors enumerated in 18 U.S.C. § 3664(a) and such findings should be keyed to the specific type and amount of restitution ordered."). Based upon the record, there is no evidence upon which the Court could reasonably calculate the measure of harm done to the victim proximately caused by the Defendant's conduct. The materials filed under seal do not suggest, much less do they provide a basis for the Court to establish as fact, that the victim has suffered any particular loss as a result of this particular Defendant's possession of her image. The Court emphasizes that where the Government is able to carry its burden of proving loss, an award of restitution under § 2259 is required where the Defendant is convicted of possessing pornographic images of the victim as a child. The Government has not met its burden under these circumstances.

Although the Court recognizes the difficulties faced by the Government and the victim to show harm that was proximately caused by this Defendant's offense, the burden of meeting this standard is not onerous. For example, a defendant involved in a child pornography distribution ring and subsequently convicted of possession or receipt of certain forms of child pornography, specifically "custom" child pornography or "real time" child pornography,[6] would undoubtedly satisfy the proxi-

---

6. "Custom" child pornography involves depictions of child rape that are "created to order for the consumer," and "real time" child pornography contemplates that "members may watch the online rape of children as

it occurs." *United States v. Williams,* 444 F.3d 1286, 1290 n. 4 (11th Cir.2006), *rev'd, United States v. Williams,* 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).

mate cause requirement in § 2259. Again, proximate cause is that which "directly produces an event and without which the event would not have occurred." *Black's Law Dictionary* 234.

In one such case involving "real time" child pornography, *United States v. Thielemann*, the defendant "admitted [in his plea agreement] that he engaged in chats with Phillips," an Internet user with whom the defendant had a sexual relationship, "and that during a chat, Phillips had on his lap a minor, visible to the defendant, and at the defendant's encouragement and inducement [Phillips] did simulate masturbation of the minor, and did pose the minor in order to effect the lascivious exhibition of the minor's pubic area." 575 F.3d 265, 269 (3d Cir.2009) (internal quotation marks omitted). Thielemann pleaded guilty to a one-count Information charging him with receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). The Third Circuit held that the district court had properly considered the defendant's "encouragement of" and "involvement in" the molestation of the victim to increase his base offense level by 10 points under the Sentencing Guidelines.[7] *Thielemann*, 575 F.3d at 269–70. Determining that minor victims involved in "real time" child pornography are proximately harmed as a result of an online recipient's encouragement of, and involvement in, the sexual abuse, the Third Circuit reasoned,

> [t]he children subjected to Thielemann's sexual predilection may not, in the opinion of Thielemann's psychiatrist, be directly physically harmed by Thielemann, but [the psychiatrist], at no time, expressed herself about the psychological trauma experienced by those abused children. Can anyone doubt that an eight-year-old victim, abused by Phillips under the direction of Thielemann, will be psychologically scarred at present and during her later years?

*Thielemann*, 575 F.3d at 274 n. 17.

Where a defendant is convicted of possession, receipt or distribution of "custom" or "real time" child pornography, and the where the circumstances indicate the defendant encouraged the sexual abuse and production of such pornographic materials, proximate cause under § 2259 would undoubtedly be established. However, the causal link between the defendant's offense and the harm done to the victim need not be that direct. If, after receiving notification of the Defendant's offense, the victim had to attend any additional therapy sessions, had to miss any days of work, or incurred any additional expenses as a result thereof, then the Court would have a basis for making specific factual findings supporting a calculation of losses proximately caused by the Defendant's offense. *See Berk*, 666 F.Supp.2d at 191–92. Restitution in a possession case is not necessarily arbitrary or speculative, and "given more information" concerning losses proximately caused by Defendant's offense, "a reasonable estimate may be possible." *Patton*, 2010 WL 1006521, at *2.[8]

---

**7.** The Sentencing Guidelines initially identified U.S.S.G. § 2G2.2 (carrying a base offense level of 22) as the Offense Guideline applicable for a violation of § 2252A. However, the district court relied on the "cross-reference" found in U.S.S.G. § 2G2.2(c), which directed the court to utilize § 2G2.1 where "the offense involved *causing*, transporting, permitting, or offering or seeking by notice or advertisement, *a minor to engage in*

sexually explicit conduct for the purpose of producing a visual depiction of such conduct." *Thielemann*, 575 F.3d at 269–70 (emphasis added).

**8.** The Court further notes that under circumstances where harm is done to the victim, some part of which was caused by the Defendant and some part of which was not, the burden is on the party seeking damages to

## IV. Disposition

To recapitulate, the Defendant's conviction for possession of child pornography is an offense for which restitution is contemplated under § 2259. The Court has found that the Government has met its burden of proving, by a preponderance of the evidence, that Amy is a "victim," under the statute, meaning that she was "harmed as a result of" Defendant's commission of the offense. There are several distinct harms visited upon a victim as a result of an individual's possession of a pornographic image of the victim as a child, and particularly in this case, the offense constituted a violation of the victim's right to privacy and caused her to suffer emotional harm as a result of the continued circulation and possession of her images. However, the Government is further required to show, by a preponderance of the evidence, the measure of the victim's losses proximately caused by the Defendant's offense of conviction. Having reviewed all the evidence in the record, the Court found nothing upon which it could make explicit findings of fact supporting a calculation of the full amount of the victim's losses proximately caused by the Defendant.

Notwithstanding the Government's failure to satisfy its burden of proving the victim's losses proximately caused by the Defendant, the Government still established that the Defendant violated the victim's right to privacy and that consequently, she was "harmed as a result of" his offense. The Defendant pleaded guilty to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b)(2), and did not contest that he unlawfully possessed pornographic images of the victim. The Court recognizes that,

pursuant to § 2259, an order of restitution is mandatory. See 18 U.S.C. § 2259(b)(4) ("The issuance of a restitution order under this section is mandatory."); see also Julian, 242 F.3d at 1245 (stating that § 2259 provides for "mandatory restitution" of "the full amount of the victim's losses"). Where a party "establishes a wrong and actual loss therefrom, he or she is entitled to nominal damages at least ... where the evidence fails to show the extent of the resulting damages." 25 C.J.S. Damages § 14 (2009); see also Doe v. Chao, 306 F.3d 170, 181 (4th Cir.2002) (citing Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)) ("Nominal damages, when available, are designed to vindicate legal rights 'without proof of actual injury.' "); 22 Am.Jur.2d Damages § 9 (2010) ("The law infers some damage from ... the invasion of a right, and if substantial damage is not established, or no evidence is given of any particular amount of loss, it declares the right by awarding 'nominal damages.' "). Accordingly, having established that the Defendant violated the victim's right to privacy and that she was "harmed as a result of" his offense of conviction, but lacking evidence in the record upon which the Court could base a factual finding on the full amount of the victim's losses proximately caused by the Defendant, the Court finds it appropriate to order the Defendant to pay, pursuant to § 2259, a nominal figure of restitution to the victim.

The Court wishes to underscore the serious nature of Defendant's offense of possession of child pornography, as Congress has, for over three decades, legislated against child pornography, United States v. Morace, 594 F.3d 340, 350 (4th Cir.

---

prove, within a reasonable degree of certainty, the share of the harm for which the Defendant is responsible. See TechDyn Sys. Corp. v. Whittaker Corp., 427 S.E.2d 334, 337, 245 Va.

291, 296 (1993). See also MicroStrategy Inc. v. Business Objects, S.A., 429 F.3d 1344, 1361–62 (Fed.Cir.2005) (same).

2010), and there is "ample evidence of Congress's intent that offenses involving child pornography be treated severely," *id.* (citing *United States v. Goff,* 501 F.3d 250, 258 n. 13 (3d Cir.2007)). Further, the Court sympathizes with the difficulties faced by the victim in seeking compensation for the harm that she has suffered, and no doubt will continue to suffer, for the rest of her life. However, when the evidence presented does not support a finding that the defendant proximately caused the victim's harm, § 2259 does not permit the Court to award more than a nominal figure of restitution.[9]

For the aforementioned reasons, the Court will GRANT the Government's request for restitution, and will ORDER the Defendant to pay the victim a nominal figure of restitution in the amount of one hundred dollars,[10] in an accompanying Order, to follow.

The Clerk of the Court is hereby ordered to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

---

9. "Federal courts possess no inherent authority to order restitution and may only do so as expressly empowered by statute." *Julian,* 242 F.3d at 1246 (citing *United States v. Nichols,* 169 F.3d 1255, 1278 (10th Cir.1999), *cert. denied,* 528 U.S. 934, 120 S.Ct. 336, 145 L.Ed.2d 262 (1999)).

10. The award of one hundred dollars in restitution comports with the definition and purposes underlying "nominal damages" in the context of restitution payments. *See United States v. Van Alstyne,* 584 F.3d 803, 820 (9th Cir.2009) (upholding portion of restitution order requiring defendant to pay "at least $25 per quarter during his prison term, an amount that is accurately described as 'nominal' ").